IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HONOLULU DATA ENTRY PROJECT, LTD. dba HDEP INTERNATIONAL, | ) ) ) ) | Civ. No. 12-000467 BMK |
| Plaintiff, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY |
| vs. | ) ) ) | JUDGMENT ON COUNT I OF THE SECOND AMENDED |
| D. BELLO ASSOCIATES and DOUGLAS W. BELLO, | ) ) ) | COMPLAINT REGARDING TERMINATION OF COLLABORATIVE AGREEMENT |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE
SECOND AMENDED COMPLAINT REGARDING TERMINATION OF
COLLABORATIVE AGREEMENT

Before the Court is Plaintiff Honolulu Data Entry Project, Ltd. dba

HDEP International's ("HDEP") Motion for Partial Summary Judgment on Count I

of its Second Amended Complaint Regarding Termination of Collaborative

Agreement.  (Doc. 136.)   HDEP's Motion seeks declaratory judgment that "all

existing agreements between HDEP and Defendant D. Bello Associates have been

validly terminated."  (Doc. 136 at ¶ A.)  HDEP's Memorandum in Support of this

Motion, however, states that the Motion "seeks a ruling on the limited issue of

whether the oral agreement between HDEP and DBA was validly terminated."

(Doc. 136-1 at 1.)  Accordingly, the Court treats HDEP's Motion as pertaining only to the oral agreement between the parties, and not to "all agreements."

The Court heard this Motion on December 5, 2013.  After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, Plaintiff's Motion is GRANTED IN PART AND DENIED IN PART.

FACTUAL BACKGROUND

HDEP is a Hawaii based company engaged in offshore data entry, including the operation of a Manila facility that performs title searches.  (Doc. 87 at ¶ 7.)  D. Bello Associates ("DBA") is a California company also involved in the title industry.  (Id. at ¶ 8.)   Douglas W. Bello ("Bello") was/is the owner of DBA. (Id. at ¶ 25.)

In 1991, HDEP and DBA entered into an informal, oral agreement to work together "to pursue contracts with title companies to provide data entry services for title documents."  (Id. at ¶ 10.)  Under this agreement, DBA handled sales and marketing, provided instruction and training, daily project management, billing, and collections.  (Id.)   HDEP provided the resources necessary to execute and deliver title services to customers including equipment, real estate, software, and a workforce.  (Id. at ¶ 11.)   Under this agreement, DBA received a

commission on HDEP's charges, but also continued to offer consulting services to companies other than HDEP.  (Id. at ¶ 12, 14.)

On July 10, 2005,  DBA presented HDEP with a letter to, "confirm the following business relationship" between DBA and HDEP:

> 1.  Existing Commissions.  HDEP is currently paying DBA the commissions specified on Exhibit A for the existing contracts specified on Exhibit A and will continue to pay such commissions for the duration of such contracts, including all renewals.
>
> 2.  New Contracts.  DBA and HDEP will continue to solicit new contracts, and HDEP will pay DBA a commission on new contracts as mutually agreed or in accordance with the schedule attached as Exibit B.

(Doc. 153-3.)   Additionally, this letter contained a stipulation that any third party purchaser of HDEP would be similarly obligated.  (Id.)  The final sentence of the letter stated "[i]f you concur with the foregoing, please execute and return one copy of this letter, which will then become a binding agreement."  (Id.)  Both DBA and HDEP signed the letter.

In November of 2005, the July 2005 agreement was renewed, with the inclusion of a new section, which provided that, "[i]f the rates payable under any existing contract or renewal are changed, HDEP and DBA will negotiate a new commission for such contract or renewal." (Doc. 153-4.)   Finally, on January 12, 2012, the parties executed a third written agreement, substantially identical to the

November 2005 agreement.  (Doc. 153-5.)

According to HDEP, as business increased, DBA was unable to handle the increased workload and fully perform its duties and responsibilities as envisioned under the parties' collaborative agreement.  (Doc. 87 at ¶ 25.)   HDEP contends it had to take over "substantially all the billing, collection, and administrative functions associated with customer contracts" because DBA lacked sufficient staff to perform this work.  (Id. at ¶ 19, 20.)  For its part, DBA asserts that "HDEP never made substantive complaints about [DBA's] performance." (Doc. 154 at ¶ 6.)

On May 17, 2012, having purportedly become dissatisfied with DBA's performance under their existing collaborative agreement, HDEP presented DBA with a letter regarding a proposed separation agreement.  (Doc. 153-6.)  The details of the proposed separation agreement are prefaced with the statement,  "[a]s HDEP . . . and [DBA] work toward a new long term agreement, it would be wise to establish a separation agreement which sets a date by which to complete a new long term agreement, and outlines how a separation would work."  (Id.)   The letter continued:

> In the event that HDEP and DBA are not able to reach a new long term agreement on or before August 15, 2012 the following provisions will govern the winding up of the current relationship:

4

1.  HDEP will honor all current contracts where DBA is named as a contractor.  HDEP will continue to service those customers and pay DBA its customary commission on those contracts. HDEP will not agree to any automatic rollover clauses. When the current contracts end, they end.

2.  Both HDEP and DBA will be able to offer new contracts to the current customers.  We suggest that a mutually agreed upon presentation be prepared which would outline the options available to the customers. The customers will be given the option to negotiate with one or both parties and to select the party with whom they would like to contract.

3.  For current customers where DBA is not a named contractor, or where the work is being done without a formal contract, HDEP will continue to service those customers and to pay DBA its commission until December 31, 2012.  At that point, those commissions will end. . . .

7.   The first of the contract notices occurs on June 14, 2012 (Grant County). The next contract notice is on August 31, 2012 (Dane County).  HDEP will agree to the automatic rollover of the Grant County contract in deference to Doug's travel schedule.  However, a new long term agreement should be completed by August 15, 2012 - two weeks before the Dane County contract notice date.  If no new long term agreement is reached by that date, the provisions of this separation agreement will automatically become effective and all other agreements between DBA and HDEP, whether written or verbal, implied or explicit, will automatically terminate.

(Doc. 153-6.)   HDEP requested that DBA sign the separation agreement indicating

DBA's approval of the terms.  (Id.)  DBA did not, however, sign and approve the

separation letter.  (Doc. 153 at 7.)

The parties did not reach a new long-term agreement by August 15, 2013.  (Doc. 137-4.)  HDEP contends, "DBA failed to agree to any approach proposed by HDEP or to make any substantive proposals of its own for a new agreement."  (Doc. 56-5.)  Accordingly, on August 21, 2012, HDEP notified DBA via email that "it understands the business relationship between HDEP and DBA is at its end."  (Id.)   Attorneys for HDEP followed up with an August 28, 2012 letter "to confirm that all agreements between HDEP and DBA are terminated and that HDEP will not enter into any joint contracts, including renewals of existing contracts, with DBA.  In addition, appropriate action will be taken to terminate the existing joint contracts for provision of services to third parties."  (Doc. 137-4.)  DBA states that HDEP ceased making commission payments to DBA in November of 2012, and has since been unilaterally terminating third party customer contracts and entering new customer contracts, which exclude DBA.  (Doc. 156 at 8.)

On August 16, 2012, HDEP filed its initial three-count Complaint against DBA.  (Doc. 1.)  This Complaint: 1) sought declaratory judgement that HDEP had the authority not to renew and/or to terminate third party contracts, and had no continuing duties to DBA outside of these contracts; 2) alleged a claim for breach of contract based upon DBA's failure to fully perform its obligations under

6

the parties' collaborative agreement; and 3) alleged a breach of the duty of good faith and fair dealing.

Shortly thereafter, DBA filed related counterclaims against HDEP: 1) seeking declaratory judgment that the parties had formed a partnership or joint venture; 2) claiming that HDEP had breached accounting duties associated with this joint venture; 3) alleging a breach of fiduciary duty; 4) asserting a breach of the implied covenant of good faith and fair dealing; and 5) requesting the judicial dissolution of the parties' joint venture.  (Doc. 9-1.)  HDEP later filed a Second Amended Complaint, which, in addition to reiterating the claim for declaratory judgment regarding HDEP's right to terminate or not renew joint contracts, seeks declaratory judgment that HDEP and DBA did not form a joint venture.  (Doc. 87.)

The parties have since stipulated to dismiss all claims and counterclaims based upon the existence of a partnership or joint venture.  (Doc. 159.)  In this context,  HDEP now moves for judgment as a matter of law and a ruling that the oral agreement between HDEP and DBA was validly terminated.  (Doc. 136.)

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed

facts warrant judgment for the moving party as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1228 (9th Cir. 2000).  However, the non-moving party cannot rely upon conclusory allegations unsupported by factual data to create an issue of material fact.  <u>Hansen v. U.S.</u>, 7 F.3d 137, 138 (9th Cir. 1993).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  <u>Anderson</u>, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.   <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

<u>DISCUSSION</u>

HDEP asserts that its 1991 oral agreement with DBA did not have a termination date, and was therefore terminable at will by either party.  DBA opposes HDEP's Motion arguing three points.  First, DBA asserts that the oral agreement had a specified duration and was therefore not terminable at will. Bello's declaration states that "it was DBA's understanding that the parties' relationship would not end until it was jointly decided to end the relationship or the contracts were no longer renewed."  HDEP counters that DBA's characterization of their oral agreement violates the rule of reasonable construction by imposing a perpetual obligation on HDEP.

Second, DBA contends that, pursuant to the parole evidence rule, the 1991 oral agreement was "memorialized" and "encompassed" by the three subsequent written agreements between the parties.  DBA argues that these written contracts, which provide that HDEP will pay commissions to DBA "for the duration of such contracts, including all renewals," prevent  HDEP from unilaterally terminating its relationship with DBA until "third party contracts cease or fail to renew."  HDEP responds that the three written agreements are not independently enforceable contracts, but rather, merely "commission addenda" clarifying the method of DBA's compensation, "and nothing more."

9

Third, DBA argues that HDEP never terminated the parties'
relationship.  HDEP argues that its August 28 letter to DBA undisputedly
terminated the parties' oral agreement.

I.      PERPETUAL CONTRACTS AND TERMINATION-AT-WILL.

Contracts of perpetual duration are, as a general rule, terminable at
will.  See Restatement (Second) of Contracts § 33, cmt. d (1981) ("When the
contract calls for successive performances but is indefinite in duration, it is
commonly terminable by either party, with or without a requirement of reasonable
notice.");  Williston on Contracts § 4:22 (4th ed.) ("a promise contemplating
continuing performance for an indefinite time is to be interpreted as stipulating
only for performance terminable at the will of either party");  Aspex Eyewear, Inc.
v. Vision Serv. Plan, 472 F. Appx. 426, 427 (9th Cir. 2012) ("A contract with
'neither an express nor an implied term of duration' is 'usually construed as
terminable at will.'").[1]

Courts will, however, "imply an ascertainable term of duration when
reasonably possible." Zee Medical Distributor Assoc., Inc. v. Zee Medical, Inc.,
94 Cal. Rptr.2d 829, 834 (Cal. App. 2000).  For example, courts may find an

---

[1] Although generally inapplicable to contracts for services, Hawaii Revised Statutes
("HRS") § 490:2-309(2), Hawaii's uniform commercial code, also provides "[w]here the
contract provides for successive performances but is indefinite in duration it is valid for a
reasonable time but unless otherwise agreed may be terminated at any time by either party."

implied term of duration where the "nature of the contract and the totality of the

circumstances" impliedly condition the obligations of the contract upon the

occurrence or non-occurrence of some event or situation.  Id. (quoting

Consolidated Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16, 447 P.2d

325, 333 (1968).  Additionally, where

> the nature of the contract and the totality of surrounding
> circumstances give no suggestion as to any ascertainable
> term, . . . the law usually implies that the term of duration
> shall be at least a reasonable time, and that the
> obligations under the contract shall be terminable at will
> by any party upon reasonable notice after such a
> reasonable time has elapsed.

Alpha Distrib. Co. of California, Inc. v. Jack Daniel Distillery, 454 F.2d 442,

448-49 (9th Cir. 1972) (quoting Consold. Theatres,  447 P.2d at 335).

Turning to HDEP and DBA's 1991 oral agreement,  HDEP argues

that it did not have a termination date and was therefore terminable by either party

at will.  DBA, however, points to Bello's declaration that states it was DBA's

understanding that the parties' relationship would not end until they jointly decided

to end the relationship or the contracts were no longer renewed.  DBA contends,

therefore, that the oral agreement between HDEP and DBA contained two possible

terms of duration and was thus not perpetual and terminable at will.  The business

relationship between HDEP and DBA would end by: 1) a joint decision of the

11

parties; or 2) the non-renewal of third party contracts.

In the first instance, even if the parties did agree to terminate their oral agreement by "joint decision of the parties," the Court holds that such language would be ineffective as a binding contractual term of duration. Indeed, if a joint decision were required for termination, one party could effectively hold the other unwilling party hostage in a perpetual business relationship. Yet, if the relationship is effectively perpetual, the law is clear that it is unilaterally terminable at will. The Court therefore rejects DBA's contention that a joint decision of the parties was required for termination.

In the second instance, DBA argues that the terms of third-party contracts govern the termination of HDEP and DBA's relationship. As the parties describe their business relationship, it encompasses both prospective, and current or ongoing elements. Prospective elements are duties and obligations geared toward securing future third-party contracts, including, among other things, sales, marketing, and training. Current or ongoing elements include, among other things, the servicing of existing third-party contracts and any duties and obligations between the parties that may necessarily arise from the servicing of third party contracts.

Existing third-party contracts and their respective termination dates

12

are irrelevant to the prospective duties and obligations of either HDEP or DBA.

Accordingly, the Court holds that with regard to the prospective elements of the

parties' oral agreement, third-party contracts cannot provide terms of duration.

Therefore HDEP was free to unilaterally terminate the prospective elements of its

oral agreement with DBA at will.

In regard to the current or ongoing elements of the parties' agreement,

the Court lacks a sufficient record to make a summary judgment ruling.  DBA

asserts that it understood the parties' oral agreement would terminate when the last

of the third-party agreements ended.  At summary judgment we must resolve all

ambiguities and draw all factual inferences in favor of DBA, the non-moving party.

It is not unreasonable that the duties and obligations of HDEP and DBA, set out in

their oral agreement, would be tied to third-party contracts entered into pursuant to

that oral agreement.  Because none of the third-party contracts are in the record, the

Court lacks sufficient information to rule on the propriety of terminating the

current or ongoing duties and obligations of either HDEP or DBA.

The termination of the prospective aspects of this agreement relieved

HDEP from the obligation of pursuing future third party contracts in collaboration

with DBA.  Termination did not, at least for purposes of summary judgment,

relieve HDEP of duties or obligations established prior to termination, including,

perhaps, the obligation to pay commissions on third party contracts.  The Court notes that this holding says nothing about HDEP's power to unilaterally cancel or refuse to renew third party contracts, and makes no judgment as to the payment of commissions under these contracts.

In sum, the Court holds that HDEP validly terminated the prospective aspects of its oral agreement with DBA.  This holding has no effect on duties and obligations of either party, which may have arisen prior to HDEP's termination, and which are presumably intertwined with third party contracts.  As discussed below, the three written commission agreements between HDEP and DBA do not alter the Court's ruling.

II.     INTEGRATION BY WRITTEN AGREEMENT

Pursuant to the parol evidence rule, "an agreement reduced to writing serves to integrate all prior agreements and negotiations concerning the transaction into the written instrument which then represents the final and complete agreement of the parties." State Farm Fire and Cas. Co. v. Pacific Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999).  Accordingly, where an oral agreement is later reduced to writing, the prior oral agreement effectively becomes a nullity, in favor of the later written agreement.

A prerequisite to the application of the parol evidence rule, however,

14

is that "there must first be a finding by the trial court that the writing was intended to be the final and, therefore, integrated expression of the parties' agreement." Matter of O.W. Ltd. P'ship, 668 P.2d 56, 60 (Haw. App. 1983).  A fully integrated agreement is one which, "in view of it completeness and specificity reasonably appears to be a complete agreement." Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 944 P.2d 97, 108 (Haw. App. 1997);  see also Restatement (Second) of Contracts § 209.

The three written agreements in this case are decidedly incomplete. Their sole concern is to describe the commissions due at specific points in time based upon attached exhibits of then-active third party contracts.  These writings provide no information as to other duties and obligations that exist under the oral agreement.  For example, they say nothing about DBA's marketing and client servicing obligations and nothing about HDEP's provision of services at its Manila facility.  Because these writings are not complete and specific they cannot be fully integrated expressions of the parties' agreement under the parol evidence rule.  The provision in these writings that HDEP will pay DBA "commissions for the duration of such contracts, including all renewals," does not require that HDEP continue to prospectively "pursue contracts with title companies to provide data entry services for title documents."  Accordingly, these written agreements do not

15

prevent HDEP from unilaterally terminating the prospective elements of the parties' oral agreement.

## III.    ADEQUACY OF HDEP'S TERMINATION

DBA's final argument is that HDEP's "proposed separation agreement" was insufficient to terminate the parties' oral agreement.  It is unclear whether DBA's argument involves an insufficiency of notice or a lack of authority, or both.      In either case, the Court finds that HDEP's termination, as described in the foregoing discussion, was effective.

The proposed separation agreement, although it sought DBA's consent, clearly indicated HDEP's intention to sever its relationship with DBA if no new long-term agreement was reached by August 15, 2012.  If there was any doubt as to HDEP's intention, it was clarified by HDEP's August 21, 2012, email informing DBA that their business relationship was at and end, and by the August 28, 2012 letter from HDEP's counsel "to confirm that all agreements between HDEP and DBA are terminated and that HDEP will not enter into any joint contracts, including renewals of existing contracts, with DBA."  Consequently, HDEP provided DBA with sufficient notice of its intention to terminate the oral agreement.

As to HDEP's authority to terminate the parties' oral agreement, the

16

Court has already held that the prospective elements of the oral agreement between the parties was terminable at will by either party.  HDEP terminated those elements of the oral agreement with its August 21 email, or at the latest, via the August 28 letter from HDEP's counsel. It is irrelevant, for purposes of terminating the parties' oral agreement, that DBA did not execute HDEP's proposed separation agreement, because DBA's permission or consent was not required.

CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART  Plaintiff's Motion for Partial Summary Judgment.  (Doc. 136.) The Court holds that the oral agreement between the HDEP and DBA, as to all future, prospective business collaboration between the parties, was validly terminated.  This holding has no effect on any current or ongoing duties and obligations of the parties, including any obligation to pay commissions on third party contracts, entered into prior to termination.

HDEP v. D. Bello Assoc. et al., Civ. No. 12-00467 BMK; ORDER GRANTING IN PART AND DENYING IN PART  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

17

DATED:  Honolulu, Hawaii, December 26, 2013.

IT IS SO ORDERED.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Honolulu Data Entry Project, Ltd. v. D. Bello Associates, et al, Civ. No. 12-000467 BMK;
ORDER GRANTING IN PART AND DENYING IN PART  PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE SECOND AMENDED
COMPLAINT REGARDING TERMINATION OF COLLABORATIVE AGREEMENT.