IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HONOLULU DATA ENTRY PROJECT, LTD. dba HDEP INTERNATIONAL | ) ) ) ) | Civ. No. 12-000467 BMK |
| Plaintiff, | ) ) ) | ORDER GRANTING HONOLULU DATA ENTRY PROJECT'S MOTION TO AMEND, AND |
| vs. | ) ) ) | GRANTING IN PART AND DENYING D. BELLO ASSOCIATES' MOTION TO |
| D. BELLO ASSOCIATES, DOUGLAS W. BELLO, and JEFFREY A. BATES | ) ) ) ) | AMEND |
| Defendants. | ) ) ) | |

ORDER GRANTING HONOLULU DATA ENTRY PROJECT'S MOTION
TO AMEND, AND GRANTING IN PART AND DENYING D. BELLO
ASSOCIATES' MOTION TO AMEND

Before the Court is Honolulu Data Entry Project, Ltd's ("HDEP") Motion to Alter or Amend Findings of Fact and Conclusions of Law and Judgment, (Doc. 282), and D. Bello Associate's ("DBA") Motion to Amend Findings and Corresponding Judgment. (Doc. 283.) Both Motions seek amendments to this Court's Findings of Fact and Conclusions of Law ("FOF & COL"), (Doc. 274), and the corresponding Final Judgment, (Doc. 275), entered on July 2, 2014.

1

The Court heard these Motions on September 5, 2014. After careful consideration of the Motions, the supporting and opposing memoranda, and the arguments of counsel, HDEP's Motion is granted, and DBA's Motion is granted in part and denied in part.

DISCUSSION

I. HDEP'S MOTION TO AMEND

HDEP's Motion requests that the following two paragraphs be altered to include the language in bold italics.

> Because DBA failed to present argument or evidence at trial regarding HDEP's obligation to provide copies of joint intellectual property, the Court limits its ruling to hold that DBA is a joint owner of all ***jointly created matrices, manuals, protocols, and other*** intellectual property prepared in performance of joint customer contracts.

(Doc. 274 at 29.)

> (Count IV) – <u>Declaration as to DBA's Rights to Intellectual Property</u>. Judgment shall be entered for DBA and against HDEP to the extent that the Court declares that DBA and HDEP are co-owners of ***all jointly created matrices, manuals, protocols, and other*** Intellectual Property ("IP") utilized in servicing their joint customers. Judgment shall be entered against DBA and for HDEP to the extent that DBA failed to establish a right to compel HDEP to provide DBA with copies of all such IP.

(Doc. 274 at 43.)

2

HDEP's proposed amendment seeks to more specifically define the nature of intellectual property at issue. DBA has not opposed HDEP's request and the Court finds that the alteration is in keeping with the Court's discussion of the issue in this case. Accordingly HDEP's Motion is granted.

II.     DBA'S MOTION TO AMEND

DBA seeks amendment to the Court's FOF & COL relating to HDEP's breach of contract for failure to pay DBA commissions as specified in the parties' January 2012 Commission Agreement, and DBA's breach of contract for violating the non-competition provision of the parties' December 2012 Partial Settlement Agreement.  Each request is addressed below.

>   A.     DBA's Counterclaim I for Breach of Contract Relating To Payment of Commissions Under January 2012 Commission Agreement

This Court held that, notwithstanding HDEP's August 22, 2012 termination of its cooperative agreement with HDEP, "the parties' 2012 Commission Agreement . . . imposed the specific obligation that HDEP pay commissions to DBA as specified in the attached list of then existing joint contracts." (Doc. 274 at 26.)  The Court held that HDEP was in breach of its obligation to pay commissions to DBA and stated specifically,

> HDEP owes DBA commissions from August 22, 2012, as specified in the 2012 Commission Agreement, subject to the following qualifications:

> (1) On those joint contracts that reached their natural expiration and were then replaced by either HDEP or DBA only written contracts, HDEP owes commissions to DBA only until their respective dates of expiration;
>
> (2) On those joint contracts that were oral and later converted to HDEP only contracts, HDEP owes commissions only until the date a written contract was executed;
>
> (3) On written joint contracts that are still ongoing, HDEP owes DBA commissions until the contracts reach their respective expiration dates, or until a party to the joint contract avails itself of the joint contract's termination provisions;
>
> (4) On ongoing joint contracts that are oral, with no expiration date, and that have not been supplanted by a written contract, HDEP's obligation to pay commissions ceased on August 22, 2012.
>
> To effectuate the Court's ruling, HDEP shall provide DBA with an accounting of all revenues received from all customers listed in the January 2012 Commission Agreement from August 22, 2012 through the various dates described above.

(Doc. 274 at 27.)

DBA seeks three modifications to these provisions to resolve ongoing disputes regarding precisely which joint contracts HDEP owes commissions on. The Court addresses each request below.

### i. Joint Contracts Not Included in the January 2012 Commission Agreement

In providing an accounting as ordered by this Court, HDEP contends it does not owe commissions on joint contracts with Lender's Title Company ("LTC") and North Dakota Guaranty and Title ("NDGT") because they were not listed in Exhibit A of the January 2012 Commission Agreement.[1] DBA concedes these contracts are not in Exhibit A, but contends that these joint contracts, in existence before termination of the parties' relationship in August 2012, were "within the Court's contemplation" when it summarized its holding regarding HDEP's obligation to provide an accounting "of all revenues received on joint customer contracts from August 22, 2012 until each contract's respective expiration date." (Doc. 274 at 42.) Additionally, DBA notes that in connection to HDEP's claim for breach of a non-competition provision, the Court awarded HDEP a share of income from DBA's work for NDGT premised upon the notion that NDGT was a joint customer subject to established commission splits. DBA contends it would be illogical to consider NDGT a joint contract for purposes of HDEP's breach of contract claim, but to exclude it for purposes of DBA's claim. Accordingly, DBA asks that the Court to amend its FOF & COL to define the

---

[1] DBA's Motion initially also requested that the joint contract for Waco Title ("WTC") be included. Based on its Reply Brief and oral argument at the hearing on this motion, the Court understands that DBA has conceded that the WTC contract would be excluded from the Court's ruling on other grounds.

"contracts specified in the 2012 Commission Agreement" to include ***all contracts expressly identified in Ex. A as well as new contracts as mutually agreed or in accordance with the schedule attached as Exhibit B***

In formulating its FOF & COL, it was the Court's intention to enforce the oral cooperative agreement between the parties to the extent that it could be clearly defined. The January 2012 Commission agreement with its attached exhibit of active contracts is specific evidence of the parties' underlying cooperative agreement.[2] It is not in and of itself the sole legal agreement that the Court sought to enforce. Therefore, where evidence of joint contracts exists outside of the January 2012 Commission Agreement and where commission terms for these contracts are evidenced by the conduct of the parties and evidence at trial, it is appropriate that these contracts be included in the Court's ruling. Notably HDEP does not deny the existence of these joint contracts and itself presented evidence of a standardized 85/15% commission split at trial. Accordingly, the Court will modify its FOF & COL and corresponding final judgment to read,

> HDEP owes DBA commissions from August 22, 2012,
> as specified in the 2012 Commission Agreement,
> ***including commissions on joint contracts with Lender's
> Title Company and North Dakota Guaranty and Title***,
> subject to the following qualifications:

---

[2] During trial neither party informed the Court that there were active joint contracts not included in Exhibit A of the Commission Agreement.

### ii. Written Joint Contracts that Continued as Oral Contracts After the Expiration of Their Terms

HDEP takes the position that nine contracts, which began as written contracts, but continued to be performed as oral contracts without expiration dates after the expiration of the written contracts, are excluded from HDEP's obligation to pay commissions pursuant to qualification four. Qualification four provides, "on ongoing joint contracts that are oral, with no expiration date, and that have not been supplanted by a written contract, HDEP's obligation to pay commissions ceased on August 22, 2012." (Doc. 274 at 27.)

DBA asserts that HDEP should still be obligated to pay commissions on these oral contracts because DBA remains liable for their performance. DBA argues that exception four should only apply to contracts that were oral at their inception, and that because these contracts continue to be performed according to the terms of the expired written contracts, they should be considered under qualification three - "written joint contracts that are still ongoing," for which HDEP owes commissions "until the contracts reach their respective expiration dates, or until a party to the joint contract avails itself of the joint contract's termination provisions." DBA asserts that this interpretation is in keeping with "common contract interpretation" applicable to written contracts that continue to be performed beyond their expiration.

7

To effectuate inclusion of these oral contracts, DBA asks that qualification three and four be amended to include the language in bold:

> (3) On written joint contracts that are still ongoing, HDEP owes DBA commissions until ***the later of the date*** the contracts reach their respective expiration dates, or until a party to the joint contract avails itself of the joint contract's termination provisions ***and DBA is removed as a contracting party***;
>
> (4) On ongoing joint contracts that are oral ***from inception***, with no expiration date, and that have not been supplanted by a written contract, HDEP's obligation to pay commissions ceased on August 22, 2012.

The Court denies DBA's request to amend qualifications three and four. A recurring issue in this case, arising from the parties' long-term practice of conducting business based upon ill-defined oral agreements, was the problem of perpetual obligations. It is precisely this problem of perpetual obligation that the Court sought to remedy in crafting qualification four. In considering purely oral contracts with no expiration date the Court deemed it untenable to impose a perpetual obligation to pay commissions. That a now oral contract may have previously been written with a defined end date is of no consequence to this conundrum. As to DBA's concern for ongoing liability, if any such liability exists, the Court presumes DBA could free itself by simply notifying previously joint

clients that DBA is terminating its contracts – exactly the same course of action DBA urges HDEP to take.

      iii. <u>Future Commission Obligations and Final Judgment</u>

    Qualification three requires HDEP to continue paying commissions on joint written contracts "until the contracts reach their respective expiration dates, or until a party to the joint contract avails itself of the joint contract's termination provisions." DBA asserts that because this portion of the Court's FOF & COL obligates HDEP to make future unknown commission payments, it leaves the amount of damages unresolved and precludes the entry of final judgment. Accordingly, DBA requests that the Court adopt its expert's estimation of future commissions rather than impose ongoing accounting obligations on HDEP. Although HDEP does not object to resolving future commission obligations among the parties by utilizing projections, it does contest whose projections should be used and what time period should be utilized to establish the baseline for future payments.

    The Court refrains from amending qualification three. The payment of commissions on actual revenues received is the most accurate method effectuating the original intent of the parties. A court judgment imposing an ongoing or future obligation is certainly not unheard of. The parties remain free to negotiate a current resolution to any future legal obligations.

### B. HDEP's Count II Asserting Breach Of Contract By DBA For Violating The Non-Competition Provision Of The Parties' December 2012 Partial Settlement Agreement

DBA asserts that the Court's finding that it breached the non-competition provision of the Parties' 2012 Partial Settlement Agreement is erroneous because there was no such provision in the agreement. Additionally, even if there were a non-competition provision, DBA argues that the Court's conclusion that DBA owed HDEP 85% of the income earned on the contested NDGT contract was inequitable. Specifically, DBA argues that because 85% of the contract constitutes a monetary award based upon HDEP's gross rather than net income after the costs of performing the contract, the award provides a windfall to HDEP. Moreover, DBA argues that because the Court lacks clear evidence of HDEP's cost of production, only nominal damages should be awarded.

In the first instance, the Court disagrees that the 2012 Partial Settlement Agreement did not contain a non-competition provision. The Agreement went to great lengths to define "new business," which the parties were free to compete against each other for. This carving out of new business would be meaningless if old or existing business were not somehow precluded from competition. Indeed the Agreement went so far as to set out illustrative examples to differentiate "new business," which the parties were free to pursue, from "not new business," which the parties were implicitly precluded from pursuing for their

individual accounts. When this Partial Settlement Agreement is read in the context of the NDGT contract, which contained an exclusivity provision barring other third party contracts within the state, it is clear to the Court that DBA impermissibly solicited something other than "new business" from NDGT. DBA's actions therefore violated a clearly implied, if not express, non-competition provision in the 2012 Partial Settlement Agreement.

In regard to the appropriateness of an award of 85% of NDGT contract proceeds to HDEP, the Court's FOF & COL stated that "this holding is in keeping with the Court's ruling on revenue sharing for all other joint contracts[.]" In these other joint contracts, the Court awarded DBA a roughly 15% commission on numerous contracts that HDEP continued to service. The Court recognized that these commissions had been bargained for and paid in recognition DBA's sales and marketing efforts, "as well as for some level of ongoing work on the accounts." (Doc. 274 at 26.) DBA, however, was generally no longer providing "ongoing work" on these accounts and therefore bore no continuing cost associated with its 15% commission.[3] Accordingly, DBA received a minor windfall on its breach of contract claim involving unpaid commissions. This result was nonetheless the most in keeping with the oral and written agreements of the parties.

---

[3] The Court concluded that the 15% commission award was nonetheless appropriate because DBA's continuing obligations were so poorly defined under the parties' oral agreement.

The Court recognizes that the award of 85% of the NDGT contract in some sense penalizes DBA by turning the NDGT contract into a money losing proposition. The Court's holding, however, was not premised upon a calculation of HDEP's lost profits, but rather the enforcement of the parties' standard fee sharing agreement which would have continued but for DBA's breach. Accordingly, the Court denies DBA's request to amend its FOF & COL as to damages associated with DBA's breach of the 2012 Partial Settlement Agreement.

## CONCLUSION

For the foregoing reasons, the HDEP's Motion to Amend is GRANTED, and DBA's Motion is GRANTED IN PART AND DENIED IN PART. The Court's Findings of Fact and Conclusions of Law, and corresponding Final Judgment shall be amended to reflect the specific changes discussed above.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 10, 2014



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Honolulu Data Entry Project, Ltd. dba HDEP International v. D. Bello Associates, Douglas W. Bello, and Jeffrey A. Bates, Civ. No. 12-000467 BMK; ORDER GRANTING HONOLULU DATA ENTRY PROJECT'S MOTION TO AMEND, AND GRANTING IN PART AND DENYING D. BELLO ASSOCIATES' MOTION TO AMEND